IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | CASE NO. 7-20-CV-009 |
| | § | |
| 5.840 ACRES OF LAND, MORE OR LESS, | § | |
| SITUATE IN STARR COUNTY, STATE | § | |
| OF TEXAS; UNKNOWN HEIRS OF | § | |
| PEDRO GARZA, ET AL, | § | |
| *Defendants* | § | |
| | § | |

**DEFENDANT ROMAN CATHOLIC DIOCESE OF BROWNSVILLE
RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR ORDER OF
IMMEDIATE POSSESSION**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES DEFENDANT **ROMAN CATHOLIC DIOCESE OF BROWNSVILLE** (hereinafter at times referred to as "Defendant") and files this response in opposition to the Plaintiff's motion for order of immediate possession and would respectfully show the Court as follows:

1. Defendant filed its original answer on February 20, 2020 setting out numerous detailed objections and defenses to the proposed taking of the property. Included among the objections and defenses were raising the First Amendment of the United States Constitution would affect the Defendant's free exercise of its religion.

2. This Honorable Court has set an initial conference in the case for April 14, 2020.

3. The motion for order of immediate possession does not adequately and fully set out why immediate possession is necessary.

4. The motion does not say how long the survey contracts have been awarded for. Moreover, the request for the order of immediate possession requests a twelve month period. The Court could probably take judicial knowledge of the fact that to go on and perform a survey of the corners of the property and the specific property the Government proposes to take could probably be accomplished in one or two days at the most. And therefore, not issuing an order at this time will not delay the Plaintiff at all in its efforts.

5. Defendant would show that the temporary right of possession would not be minimally intrusive but would in fact greatly intrude upon the Defendant's property and First Amendment Right of freedom of religion.

6. The Defendant again reiterates its objection to the amount of just compensation as being very inadequate. Defendant also relies on the other objections and defenses raised in its answer.

7. The Diocese is unable to consent to the temporary easement or to any other action that would facilitate the construction of a border wall on its property. That is because the proposed border wall is fundamentally inconsistent with Catholic values. The adjoining property to the property sought to be condemned here is where Santa Rosa de Lima Catholic Church is located. There is also a large building owned by the Diocese which serves as Religion classes for children of the church and has a meeting room and kitchen. This building is used for retreats and other services. There is also a parking lot to serve these properties. Masses are held presently on Sunday and Tuesday and also on special religious holidays.

8.   In addition to the aforesaid defenses raised above and the argument hereinafter the

Defendant must now deal with the coronavirus pandemic crisis besieging the country.

As the Court can take judicial knowledge the President of the United Stated has

declared a national emergency. The Governor of the State of Texas has declared an

emergency. There are restrictions in the counties for gatherings of people and other

health measures. If the Court was inclined to grant the motion for immediate

possession there should be strict limits placed on the number of people that could go

on the property. But more important this is an additional reason why this matter

should not be ruled on at this time without a hearing.

## ARGUMENT

### I.   The Diocese Cannot Consent to Any Activities that Facilitate the Building of the Border Wall on Church Property.

Under the Religious Freedom Restoration Act (RFRA), the Government "may

substantially burden a person's exercise of religion only if it demonstrates that application of the

burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the

least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-

1(b). RFRA protects "any exercise of religion, whether or not compelled by, or central to, a

system of religious belief." *Id.* § 2000cc-5(7)(A) (incorporated through *id.* § 2000bb-2(4)).

As the Supreme Court has held, RFRA provides protections against government efforts to

compel religious individuals and entities to participate in activities that are contrary to their

sincerely held beliefs, where that compulsion results in a substantial burden on religious

exercise. *See Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2775 (2014) (concluding that

the government's mandate that all employers provide contraceptive coverage under the Patient

Protection and Affordable Care Act substantially burdened the respondents' exercise of religion because the mandate "demand[ed] that [respondents] engage in conduct that seriously violates their religious beliefs"). So long as these beliefs are sincerely held, it is not for the Government or the courts to decide whether the action demanded is too attenuated to impinge on matters of faith. *See id.* at 2778 (rejecting judicial inquiry into the attenuation of the causal chain underlying respondents' beliefs or the reasonableness of those beliefs because such an inquiry would "implicate[] a difficult and important question of religion and moral philosophy, namely, the circumstances under which it is wrong for a person to perform an act that is innocent in itself but that has the effect of enabling or facilitating the commission of an immoral act by another").

As explained in greater detail below, the Diocese refuses to grant the Government's requested right of entry and continues to oppose the Government's Motion for Immediate Possession because it cannot, as a matter of Catholic faith in practice, participate in the building of a border wall that is contrary to the Diocese's sincerely held religious beliefs. First, the wall is inconsistent with Catholic teachings on the universality of human solidarity. Second, the proposed border wall is likely to lead to injury or death on land that currently belongs to the Diocese, contrary to the Catholic Church's belief in the sanctity of human life. The Diocese believes that it must steward its land in a manner that is consistent with its beliefs.

The Diocese recognizes that the Government's acquisition of a temporary easement on the Property through eminent domain does not make the Diocese a party to the taking and that no affirmative action will be required of the Diocese if the Court grants the Motion for Immediate Possession. *See* 40 U.S.C. § 3114(b)(1); *United States v. Petty Motor Co.*, 327 U.S. 372, 376 (1946) ("[Federal] [c]ondemnation proceedings are in rem, and compensation is made for the

value of the rights that were taken." (citations omitted)).  Therefore, the Diocese acknowledges that the Court may grant the Government's Motion over the Diocese's objection and thus allow the Government to enter the Property for the limited purposes stated in the Complaint and Declaration of Taking without imposing a substantial burden on the Diocese's exercise of its religious beliefs.  But the Church cannot and will not consent, thereby participating in actions that it views as hostile to Catholic teachings and values.

### A. The Proposed Border Wall Would Function as a Counter-Sign to the Catholic Church's Teachings on Universality and Openness.

Universality—the understanding that all people share a common humanity and dignity—is a key tenet of the Catholic faith.  Indeed, the word "catholic" means "universal."  Merriam-Webster Online Dictionary, *archived at* https://perma.cc/K7A2-222Q. "[T]he Church is catholic because she has been sent out by Christ on a mission to the whole of the human race." Catechism of the Catholic Church ¶ 831, *archived at* https://perma.cc/BZ2R-PX9S.  According to Catholic belief, "[i]n the beginning God made human nature one and decreed that all His children, scattered as they were, would finally be gathered together as one," and "God sent the Spirit of his Son," Jesus Christ, to foster the cohesion of all humanity.  *Lumen Gentium*: Dogmatic Constitution of the Church ¶ 13 (1964), *archived at* https://perma.cc/L9KF-RSRT.

Reflecting those foundational principles, Pope Francis has explained that the issue of migration is of immense importance to the Catholic community because the lives of the immigrant poor are as sacred as the lives of the unborn.  Pope Francis, *Gaudete et Exsultate*: Apostolic Exortation on the Call to Holiness in Today's World, *archived at* https://perma.cc/G2ZD-9DJ7.  And he has said that indifference to the plight of migrants and to the forces that drive migration "points to the loss of that sense of responsibility for our fellow

men and women upon which all civil society is founded." Pope Francis, *Laudato Si'*: Encyclical Letter on Care for Our Common Home ¶ 25 (2015), *archived at* https://perma.cc/AWY7-M8UH.

The proposed border wall is the antithesis of this message of universality and to the human solidarity that Catholic moral teaching requires. A wall reflects the view that humanity is not a community of mutual responsibilities, but instead is divided into camps of "us" and them." Catholic teaching recognizes that the state has the right to protect its sovereignty by reasonable means and to secure its borders, but the Diocese cannot consent to the erection of a physical symbol of division and dehumanization on its Property, especially where there are alternative means of patrolling the border. A barrier that prevents victims of government tyranny, gang violence, domestic abuse, and economic insecurity from seeking refuge in the United States cannot be reconciled with Catholic moral and doctrinal teaching. In short, the wall would be a "counter-sign" to the Church's mission in the Valley.

### B.     The Proposed Border Wall Risks Harm to Human Life.

The foundation of Catholic social teaching is that all human life is sacred and that the dignity of the human person is the moral foundation for society. This belief extends from the first moment of existence, taking expression in the Church's opposition to abortion; throughout each person's life, demanding concern for unjust economic systems and war, for example; and to the end of life, requiring opposition to euthanasia and the death penalty. *Id.* ¶ 7. Under these teachings, "the measure of every institution is whether it threatens or enhances the life and dignity of the human person." U.S. Conference of Catholic Bishops, *Life and the Dignity of the Human Person*, *archived at* https://perma.cc/R64Q-HDVY (last visited Dec. 27, 2018); *see also* St. John Paul II, *Evangelium Vitae*: The Gospel of Life ¶ 3 (1995), *archived at*

https://perma.cc/A76H-BFU3 ("[E]very threat to human dignity and life must necessarily be felt in the Church's very heart; it cannot but affect her at the core of her faith in the Redemptive Incarnation of the Son of God, and engage her in her mission of proclaiming the Gospel of life in all the world and to every creature (cf. Mk 16:15).").

The Diocese believes that it has a moral obligation to adhere to and uphold Catholic social teaching in all of its actions, including in its stewardship of Church-owned lands. The Diocese will not consent to sell or lease its land for uses that are contrary to Catholic principles. For that reason, when the Diocese conveys or leases property to third parties, it regularly includes restrictive covenants that prohibit the use of the land for the purposes antithetical to Church teaching, such as abortion or euthanasia. And for that reason, the Diocese cannot consent to the use of the Property at issue here to lay the groundwork for the construction of a wall that it believes is likely to lead to great physical harm and may result in the death of innocent migrants.

News reports of injury and death—including injuries to innocent people and the deaths of children—have issued from the southern border in recent days and weeks. Miriam Jordan, *8-Year-Old Migrant Child from Guatemala Dies in U.S. Custody*, N.Y. Times (Dec. 25, 2018), *archived at* https://perma.cc/WAA3-NWVF, Ron Nixon, *Migrant Girl's 'Horrific, Tragic' Death Is Not Its Responsibility, White House Says*, N.Y. Times (Dec. 14, 2018), *archived at* https://perma.cc/9WNH-WV9T; Megan Specia & Rick Gladstone, *Border Agents Shot Tear Gas into Mexico. Was It Legal?*, N.Y. Times (Nov. 28, 2018), *archived at* https://perma.cc/3SDS-XM9G; *Deaths by Border Patrol*, Southern Border Communities Coalition, *archived at* https://perma.cc/GU7N-HR7Z] (last visited Dec. 25, 2018). The Diocese has the greatest respect

for the responsibilities of the men and women charged with border security.  And by invoking these incidents, the Diocese does not intend to assign blame.  But these tragedies demonstrate that maximal border enforcement threatens life and limb.  If the Government takes possession of the Diocese's land, the Diocese will lose its ability to ensure that the Property is used in a manner that protects rather than injures human life.  Therefore, the Diocese cannot consent to any steps that facilitate the building of a border wall that is likely to do such harm.

In sum, the proposed erection of a border wall on the Diocese's property would stand as a counter-sign to the Church's teachings on the universal nature of humanity and would pose a risk of physical harm to migrants, in contravention of the Church's respect for human life.  Because consenting to entry on the Church's land would facilitate the construction of a border wall, the Diocese opposes the Government's Motion.

## CONCLUSION

For all the reasons stated above, the Diocese opposes the Government's Motion for an Order of Immediate Possession.  The Diocese urges the Government to discontinue its efforts to exercise eminent domain on the Property and to identify alternative methods of securing the border that will not undermine Catholic values.

WHEREFORE PREMISES CONSIDERED, Defendant Roman Catholic Diocese of Brownsville requests the following:

1. An order be entered denying Plaintiff's motion for order of immediate possession;

2. That such a motion not be considered until at least or after the initial conference already set for April 14, 2020;

3. That the Court consider all the Defendant's objections and defenses in deciding whether to issue such an order for immediate possession;

4. In the alternative, that if the Court was inclined to grant an order for immediate possession that reasonable restrictions be placed on the Plaintiff as to when it may enter the property and prior notices that it must give to the Defendant through its Attorney prior to entering on to the property of at least 72 hours before entry; and

5. That from any date the possession is granted it should be much less than 12 months to conduct the activities required by the government;

6. The Court should also require the government and any of its agents, contractors, or assigns that go on the property to fully indemnify the Defendant in the case of any claims for death or injuries to person or property. The Court should require the Government contractors, agents and assigns have adequate insurance to cover any claims that could be made for damages to person or property while conducting activities on Defendant's property.

7. That the Court grant the Defendant such other and further relief as the Court deems proper.

Respectfully submitted,
**ROMAN   CATHOLIC   DIOCESE   OF BROWNSVILLE, Defendant**

By:      */s/ David C. Garza*
   **David C. Garza (Attorney in charge)**
   Texas State Bar No. 07731400
   Southern District of Texas ID No. 3778
   dgarza@garzaandgarza.com
   GARZA & GARZA, L.L.P.
   680 East St. Charles, Suite 300
   P.O. Box 2025

Brownsville, Texas  78522-2025
Telephone: (956) 541-4914
Fax: (956) 542-7403
**ATTORNEY FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2020, I electronically filed the foregoing response in opposition by Defendant with the Clerk of the Court using the CM/ECF system which will send notification to all counsel of record.

**Roland D. Ramos**                                   *email: roland.ramos@usdoj.gov*
Assistant United States Attorney
Southern District of Texas No. 3458120
Texas Bar No. 24096362
1701 W. Bus. Highway 83, Suite 600
McAllen, Texas 78501
Tel.: (956) 618-8010
Fax: (956) 618-8016
*Attorney for Plaintiff*

**Efren Olivares**                                   *email: efren@texascivilrightsproject.org*
**Ricardo Garza**
**Karla M. Vargas**
1017 West Hackberry Avenue
Alamo, Texas 78516
Tel.: (956) 787-8171 ext. 121
Fax: (956) 787-6348
*Attorneys for Individual Defendants*
*Nayda Alvarez, Leonel Romero Alvarez, and*
*Yvette Gaytan*


                    /s/ *David C. Garza*
                      David C. Garza